

FILED & JUDGMENT ENTERED
Christine F. Winchester

December 2 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re | Case No. 17-31585 |
| APRIL LATOYA JONES, | Chapter 13 |
| Debtor. | |
| APRIL LATOYA JONES, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-3049 |
| STATE EMPLOYEES' CREDIT UNION, | |
| Defendant. | |

### ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

This matter is before the Court on Defendant State Employees' Credit Union's ("SECU") Partial Motion to Dismiss (the "Motion") (Dkt. 10) filed on September 5, 2025, SECU's supporting brief (Dkt. 11), Plaintiff April Jones's ("Plaintiff") response to the Motion (Dkt. 13), and SECU's reply brief in support of the Motion (Dkt. 15). The Court held a hearing on the Motion on October 23, 2025, at which Ethan R. White and Andrew W.J. Tarr, counsel for SECU, Rashad Blossom,

counsel for Plaintiff, and Neil D. Jonas, counsel for the Chapter 13 Trustee, appeared. For the reasons that follow and as stated on the record at the continued hearing on November 19, 2025, the Court grants SECU's Motion.

## BACKGROUND

Plaintiff filed a voluntary petition under Chapter 13 with this Court on September 27, 2017, commencing Case No. 17-31585. [Doc. 1 (hereinafter "Compl.") ¶ 12].

Plaintiff owns a home in Charlotte, North Carolina. *Id.* ¶ 9. Her mortgage is with SECU. *Id.* ¶ 12. SECU filed a proof of claim—Proof of Claim No. 3—in Plaintiff's bankruptcy for the then-outstanding amount under Plaintiff's 20-year mortgage. *Id.* ¶¶ 13-14; *see also* [Case No. 17-31585, Claim 3-1 Part 2 at pp. 9, 13].[1]

On December 30, 2017, this Court entered an order confirming Plaintiff's Chapter 13 Plan (the "Plan"). Compl. ¶ 17. As part of the Plan, SECU's claim was allowed, and Plaintiff made payments through the Chapter 13 Trustee and directly to SECU to preserve the mortgage going forward and pay back her pre-petition arrearage. *See id.* ¶¶ 18-19; *see also* [Case No. 17-31585, Dkt. 3]. Ms. Jones made the required Plan payments—including the payments for SECU's claim—without objection or dispute. On March 31, 2023, the Chapter 13 Trustee filed a report of completion of plan payments. Compl. ¶ 22. On July 12, 2023, the Court entered a discharge order. *Id.* ¶ 23. The Court entered a final decree closing the case on July 18, 2023. [Case No. 17-31585, Dkt. 79].

---

[1] The Court may consider public court records on SECU's Motion. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

On May 29, 2025, Plaintiff filed an *ex parte* motion to reopen the bankruptcy case, which this Court granted on May 30, 2025. [Case No. 17-31585, Dkts. 81-82]. Plaintiff then filed her Complaint initiating this adversary proceeding on June 22, 2025.

SECU's Motion seeks dismissal with prejudice of Counts I and V of Plaintiff's Complaint. Count I asserts a claim objection under 11 U.S.C. §§ 502 and 506 based on SECU's alleged violations of Federal Rule of Bankruptcy Procedure 3001 for failure to file an escrow analysis performed as of the petition date, as well as SECU's alleged failure to fill out the escrow shortage and payment history correctly on the Proof of Claim Form 410A. Compl. ¶¶ 35-41. Count V asserts a claim under the North Carolina Debt Collection Act (the "NCDCA") based on alleged misapplication of payments by SECU during the bankruptcy. *Id.* ¶¶ 81-87.

## ANALYSIS

### I. Standard Applicable to SECU's Motion to Dismiss

SECU moves to dismiss Counts I and V under Federal Rule of Civil Procedure 12(b)(6), and alternatively, Rule 12(b)(1), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

Under Rule 12(b)(6), dismissal is required for failure to state a claim if the complaint fails to include enough factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court assumes the truth of the complaint's factual allegations, but need not accept "legal conclusions" or "unwarranted inferences, unreasonable conclusions, or arguments." *In re Hickory Printing Grp., Inc.*, 469 B.R. 623, 625 (Bankr. W.D.N.C. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Under Rule 12(b)(1), a court should dismiss a claim for lack of subject matter jurisdiction if the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *McLaughlin v. Safway Servs., LLC*, 429 F. App'x 347, 348 (4th Cir. 2011).

**II.     The Complaint's Count I Claim Objection**

Plaintiff's Count I claim objection, asserted pursuant to 11 U.S.C. §§ 502 and 506, seeks the disallowance of SECU's Proof of Claim No. 3 in full. Compl. ¶ 41. At the hearing on this matter, Plaintiff's counsel clarified that Plaintiff does not object to SECU's entire proof of claim related to her mortgage, but rather that Plaintiff objects only to that portion of the claim that was allegedly affected by an improper escrow analysis. With that explanation, Plaintiff's counsel sought leave to amend Count I.

In light of Plaintiff's concession, dismissal of Count I is appropriate. The Court will dismiss the claim with prejudice and will deny Plaintiff's oral motion to amend Count I.

In support of its Motion, SECU relies on *In re Boltz-Rubinstein*, 574 B.R. 542 (Bankr. E.D. Pa. 2017) to argue that 11 U.S.C. §§ 502 and 506 do not create private rights of action. In *Boltz-Rubinstein*, the court held that §§ 502 and 506 both play a significant role in bankruptcy case administration, but that neither Code provision creates a freestanding right of action. *Id.* at 549 (citing *In re Padilla*, 389 B.R. 409, 423 (Bankr. E.D. Pa. 2008)). The court further observed that this principle was fortified in *Boltz-Rubinstein* by the fact the debtor sought a remedy for purported violations of §§ 502 and 506 after her case was completely administered and her discharge was entered. *Id.* at 549-50. With the plan confirmed and performance under the plan completed, the court noted, §§ 502 and 506 have no further role to play. *Id.*

That is exactly the situation here. Plaintiff's bankruptcy was closed, and all assets were fully administered by the Trustee. This Court agrees with the *Boltz-Rubinstein* decision that after

4

a plan is confirmed and payments are completed, there is no private right of action and no further role for §§ 502 and 506 to play. For those reasons, the Court dismisses Count I of the Complaint with prejudice and denies Plaintiff's oral motion to amend because amendment would be futile.

### III.    The Complaint's Count V NCDCA Claim.

The Court next turns to the Complaint's Count V, which asserts a claim under the NCDCA. Specifically, Plaintiff's NCDCA claim alleges the following:

> [B]y misapplying Trustee plan payments and direct payments to an inaccurately calculated escrow shortage that was not disclosed and/or to which SECU was not entitled, misapplying such payments to principal and interest, and unlawfully placing money into a suspense account, SECU violated N.C.G.S. § 75-55(2) because it collected charges, fees or expenses incidental to the principal debt without being legally entitled to such fees and charges.

Compl. ¶ 85. Pursuant to this claim, Plaintiff seeks actual and treble damages, civil penalties for each violation of the NCDCA, and attorneys' fees and costs. *Id.* ¶ 87.

SECU argues that the NCDCA claim is preempted because it is based solely upon alleged violations of bankruptcy law that occurred during the bankruptcy case. Alternatively, to the extent another basis for the claim exists, SECU contends that the Court lacks subject matter jurisdiction over the claim. The Court agrees with SECU.

The "vast majority" of courts hold that state law claims premised solely upon allegations that a defendant violated bankruptcy law are preempted. *Diamante v. Solomon & Solomon, P.C.*, No. 1:99CV1339 (FJS/DRH), 2001 WL 1217226, at *2 (N.D.N.Y. Sept. 18, 2001). These courts do so based upon field preemption, conflict preemption, or both. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000) (holding state law claim was preempted where it both stood as an obstacle to Congress's purposes by undermining uniformity of the Code and that Congress had preempted the field of bankruptcy).

As with the vast majority of courts, this Court in *In re Tate* held that an NCDCA claim premised on a defendant's improper filing of a proof of claim for attorneys' fees was preempted by federal bankruptcy law. 253 B.R. 653, 657, 671 (Bankr. W.D.N.C. 2000). The NCDCA claim in *Tate* was grounded entirely on alleged failures to follow bankruptcy procedures in applying for these fees. *Id.* The Court held that the NCDCA claim was barred by conflict preemption because bankruptcy procedure is solely federal in nature and superimposing various state law remedies to bankruptcy procedural violations would cause disruption and a breakdown in the uniformity of bankruptcy case administration. *Id.* at 671.

Similarly, in *Holloway v. Household Automotive Finance Corp.*, the Northern District of Illinois held that a state law claim brought under the Illinois Consumer Fraud and Deceptive Practices Act, premised entirely on alleged failures to follow federal proof of claim and valuation procedures under the Bankruptcy Code, was preempted. 227 B.R. 501, 507-08 (N.D. Ill. 1998). There, the court relied on field preemption, reasoning that the Code provides a comprehensive scheme that sets out procedures for proofs of claim and remedies for alleged misconduct regarding the same. *Id.*

SECU maintains in this case that the Complaint's sole basis for alleging SECU was not entitled to collect and apply the amounts it allegedly did during the bankruptcy is due to asserted violations of the Federal Rules of Bankruptcy Procedure.

In response, Plaintiff argued that her claim under the NCDCA is not based solely on bankruptcy law violations. She contends that SECU's failure to disclose accurate escrow shortages, misapplication of mortgage payments, and collection of unauthorized fees and expenses constitutes a violation of the NCDCA that could occur outside of a bankruptcy case.

Reviewing the materials on the record before it, and having considered the arguments of counsel at the hearing, the Court concludes that Plaintiff's NCDCA claim appears to rest in part on alleged violations of the Federal Rules of Bankruptcy Procedure and in part on alleged conduct independent of bankruptcy law. To the extent the claim is based on alleged violations of federal bankruptcy law, the claim is preempted and will be dismissed with prejudice. *See Tate*, 253 B.R. at 671, *Hollaway*, 227 B.R. at 508.

The Fourth Circuit's decision in *Guthrie v. PHH Mortgage Corp.*, 79 F.4th 328 (4th Cir. 2023) requires no different result. Although the Fourth Circuit there determined that an NCDCA claim based on a violation of the discharge injunction occurring *after* a bankruptcy was not preempted, the Fourth Circuit expressly stated that it was not addressing a case involving alleged violations of the automatic stay, noting that the automatic stay concerns events during the bankruptcy. *Id.* at 342 n.9. *Guthrie* also emphasized that the "best argument" in favor of conflict preemption—that the NCDCA claim detracted from the central administration of bankruptcy law—was not available in that case because the NCDCA claim there was based on alleged violations of the discharge injunction that took place after the bankruptcy closed and thus did not impact the administration of the bankruptcy. *Id.* at 339. In contrast, Plaintiff's allegations here relate entirely to alleged procedural violations during a bankruptcy. As this Court held in *Tate*, bankruptcy procedure is solely federal and should not be supplanted by state law remedies. *Tate*, 253 B.R. at 671.

Further, to the extent the claim is based on conduct independent of bankruptcy law, the Court lacks subject matter jurisdiction to consider the claim, and it will be dismissed without prejudice. For a bankruptcy court to hear and determine a matter, it must have subject matter jurisdiction under 28 U.S.C. § 1334. *In re Gaitor*, No. 13-80530, 2015 WL 4611183, at *5 (Bankr.

7

M.D.N.C. July 31, 2015). Section 1334(b) divides jurisdiction for bankruptcy courts into three categories: "arising under," "arising in," or "related to" jurisdiction. *In re Houck*, No. 11-51513, 2018 WL 722462, at *8 (Bankr. W.D.N.C. Feb. 5, 2018), *report and recommendation adopted in part, rejected in part sub nom. Houck v. Lifestore Bank Substitute Tr. Servs., Inc.*, 582 B.R. 138 (W.D.N.C. 2018).

None of these categories apply here. The NCDCA claim does not "arise under" the bankruptcy code, nor does it "arise in" a bankruptcy case, because it is a state law claim that can and does exist outside of bankruptcy. *See Gaitor*, 2015 WL 4611183, at *6 (reaching the same conclusion as to an NCDCA claim). While the Court's "related to" jurisdiction does cover a broader range of proceedings, the Court also lacks such jurisdiction under that category because the outcome of this action cannot "conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Plaintiff's bankruptcy case has been fully administered and was closed for approximately two years before this adversary proceeding was ever filed. The Court, therefore, dismisses the NCDCA claim without prejudice to the extent it is not based on alleged violations of bankruptcy law. *See Gaitor*, 2015 WL 4611183, at *6.

The Court makes three more points with respect to the NCDCA claim.

First, at the hearing, the Chapter 13 Trustee's counsel expressed concern that dismissing the NCDCA claim was an overly broad remedy and might be interpreted as suggesting that a debtor can never pursue state law remedies for alleged misapplication of payments during a bankruptcy. That is not the Court's holding. In this case, the Court reaches its preemption holding due to the degree to which the claim is premised on alleged bankruptcy law violations occurring during a bankruptcy. The Court reaches its jurisdictional holding because the bankruptcy case has been

8

fully administered and closed for an extended period of time. Similar claims asserted during an active bankruptcy may present different preemption and jurisdictional questions, the answers to which will be dependent on the facts of the case, the nature of the cause of action, and the degree to which a claim is intertwined with bankruptcy law. The Court does not now hold that a party could never bring an NCDCA claim in an active bankruptcy case.

Second, Plaintiff argues that the NCDCA claims cannot be preempted because the NCDCA falls under the purview of North Carolina's police powers and is therefore afforded special treatment. Plaintiff relies upon *Aguayo v. U.S. Bank*, 653 F.3d 912 (9th Cir. 2011), *In re Pryor*, 479 B.R. 694 (Bankr. E.D.N.C. 2012), and *Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818 (1st Cir. 1992). The Court does not find this argument persuasive. The cases Plaintiff cites do not establish that the NCDCA is an exercise of police powers by the State of North Carolina, nor do they address the circumstances presented here. *See Aguayo*, 653 F.3d at 916 (addressing whether the National Bank Act preempted certain consumer protection law claims); *Pryor*, 479 B.R. at 697 (same); *see also Greenwood*, 971 F.2d at 831 (holding state statute preempted by the Depository Institutions Deregulation and Monetary Control Act).

Finally, Plaintiff cites this Court's opinions in *In re Peach*, No. 21-30390, 2025 WL 930363 (Bankr. W.D.N.C. Mar. 25, 2025) and *In re Owens*, No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 15, 2014) to argue that this Court has previously held that other state laws governing debt collection in bankruptcy are not preempted. The Court finds that reliance to be misplaced. As SECU correctly explains in its briefing, those cases address whether mortgage lenders are required to comply with Federal Rule of Bankruptcy Procedure 3002.1 when considered against the requirements of N.C.G.S. § 45-91, not whether the NCDCA is preempted. Judge Whitley held in *Owens*, and this Court agreed in *Peach*, that under the Supremacy Clause

and N.C.G.S. § 45-91, Federal Rule of Bankruptcy Procedure 3002.1 governs, and N.C.G.S. § 45-91 applies only to the extent it does not conflict with bankruptcy law. *In re Peach*, 2025 WL 930363, at *5; *In re Owens*, 2014 WL 184781, at *3. The issue in those cases is thus distinguishable from the preemption issue presently before the Court.

## CONCLUSION

For the reasons set forth above, the Court will **GRANT** SECU's Motion. Plaintiff's Count I of the Complaint is dismissed with prejudice. Plaintiff's Count V of the Complaint is dismissed with prejudice to the extent the claim is based on alleged bankruptcy law violations, and dismissed without prejudice to the extent the claim is based on any other basis. SECU shall file an answer to the remainder of the Complaint within fourteen (14) days after entry of this Order.

**SO ORDERED.**

This Order has been signed electronically.　　　　　　　　　　United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.